E-Filed 8/24/16

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>FIRST SPECIALTY INSURANCE CORPORATION,<br><br>　　　　　　Defendant. | Case No. 5:16-cv-00407 (HRL)<br><br>**ORDER ON DISCOVERY DISPUTE JOINT REPORTS 1 AND 2**<br><br>Re: Dkt. No. 24, 28 |

A construction company filed a cross-complaint against subcontractor Collier Warehouse ("Collier") as part of a construction-defect dispute. Collier had general-liability insurance through Hartford Casualty Insurance Company ("Hartford"), First Specialty Insurance Corporation ("First Specialty"), and Nationwide Insurance ("Nationwide"). Dkt. No. 24 at 2. Hartford, First Specialty, and Nationwide each agreed to defend Collier in the construction-defect suit. *Id.* Collier ultimately requested that Hartford and Nationwide settle the litigation with no contribution from First Specialty, *id.* at 2-3, and Hartford and Nationwide did so, *id.* at 3. Hartford now sues First Specialty for equitable contribution.

First Specialty has largely refused to produce documents requested by Hartford, *see* Dkt. No. 24 at 3, and the parties filed Discovery Dispute Joint Report ("DDJR") 1 to resolve whether Hartford is entitled to the withheld documents, Dkt. No. 24 at 1. The parties filed DDJR 2 to resolve whether Hartford is entitled to depose claims adjuster Kevin Curry ("Curry"). Dkt. No. 28. First Specialty argues in each DDJR: (1) the requested discovery is not relevant because there are no material facts in dispute; and (2) various privileges and privacy rights support the withholding of the requested discovery. First Specialty also argues in DDJR 2 that it would be

unduly burdensome to produce Curry for a deposition.[1]

## Discussion

Both of the pending DDJRs involve the same overarching relevance dispute: if Collier's settlement-contribution request is relevant to Hartford's claim, then is it also relevant to review specific litigation risks that might have motivated the request? First Specialty asserts that Collier asked it to "refrain from reimbursing Hartford and Nationwide 'in order to preserve the First Specialty funds for potential use in the future.'" Dkt. No. 17 at 3. Hartford seeks information related to the specifics of Collier's request and "the assertion that Collier required First Specialty's policy limits for future claims." Dkt. No. 24 at 4. In particular, Hartford seeks "the Laurels, Redwoods, and Sycamores claim files," which relate to litigation against Collier, and "documents which reflect the remaining completed operations limits for each policy First Specialty issued to Collier." *Id.* at 10-11. First Specialty counters that Collier's decision might be relevant to Hartford's claim but that, nevertheless, "[i]nformation about other construction-defect claims is not relevant to deciding whether Hartford is entitled to equitable contribution." Dkt. No. 24 at 8.

The court, as to each DDJR, rejects First Specialty's relevance argument. Federal Rule of Civil Procedure ("FRCP") 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26. Courts decide equitable contribution claims between insurers by "weigh[ing] the equities" of the individual case, *Axis Surplus Ins. Co. v. Glencoe Ins. Ltd.*, 204 Cal. App. 4th 1214, 1231 (2012), and a trial court has broad discretion to resolve an equitable-contribution claim by determining which results would be "the most equitable . . . based on the facts and circumstances of the particular case," *Centennial Ins. Co. v. United States Fire Ins. Co.*, 88 Cal. App. 4th 105, 112 (2001) (collecting cases and describing six distinct methods that have been used to resolve

---

[1] DDJR 1 includes an argument by Hartford for why First Specialty would not be unduly burdened by the proposed document production, but First Specialty makes no real undue-burden argument in DDJR 1. First Specialty instead concludes, without citing any authority or making any separate argument, that it is unduly burdensome to produce irrelevant documents. Dkt. No. 24 at 10. This conclusion fails under its own terms if the underlying relevance argument fails. First Specialty has therefore duly raised in DDJR 1 only two theories to support the withholding of documents: relevance, Dkt. No. 24 at 7, and privileges-and-privacy-rights, *id.* at 9.

1  equitable-contribution claims). First Specialty bases its defense on the fact that Collier directed
2  the company to preserve its policy limits for use in other litigation. The court is persuaded that
3  information about any such litigation is relevant to the fact-intensive process of seeking the most
4  equitable result in this case. Hartford therefore seeks information that satisfies FRCP 26's "low
5  threshold for relevance." *See*, *e.g.*, *Wit v. United Behavioral Health*, No. 14-cv-02346-JCS, 2016
6  WL 258604, at *11 (N.D. Cal. Jan. 21, 2016).

7  The court also rejects the undue-burden argument First Specialty raises against Hartford's
8  request to depose Curry. First Specialty argues that Curry knows only a small amount of
9  discoverable information which could easily be obtained through a stipulation, like for example
10 whether certain documents are authentic, and so under FRCP 26(b)(2)(C)(i) the court must limit
11 discovery of that small set of information to a more convenient and less burdensome source—a
12 stipulation. Dkt. No. 28 at 5-6. As previously discussed, the court rejects First Specialty's narrow
13 interpretation of what information is relevant to this case, and so Hartford is entitled to more
14 broadly seek details about other litigation faced by Collier. A simple document-authentication
15 stipulation would therefore be no substitute for the deposition of Curry, a claims adjuster who has
16 personal knowledge of relevant facts. Furthermore, FRCP 26(b)(2)(C)(i) ordinarily applies when
17 several different sources are able to provide identical copies of an existing document, and First
18 Specialty cannot provide an identical copy of deposition testimony Curry has not yet given. *See*
19 *MicroTechnologies, LLC v. Autonomy, Inc.*, No. 15-cv-02220-RMW-HRL, 2016 WL 1273266, at
20 *3 (N.D. Cal. Mar. 14, 2016). First Specialty has therefore failed to show it would suffer an
21 undue burden from providing Curry for a deposition.

22 The court turns to the privileges-and-privacy-rights arguments raised by First Specialty.
23 The court outright rejects all such arguments with respect to the question of whether Curry should
24 be deposed. Hartford correctly points out that FRCP 30(c)(2) describes "privilege" as a possible
25 basis for refusing to answer a specific question, but not as a basis for refusing to "proceed[]" with
26 a deposition, and First Specialty gives no authority for the proposition that a privilege or privacy
27 right may justify wholly refusing to provide a witness for a deposition. Dkt. No. 28 at 6-7. And
28 although First Specialty generally discusses the attorney-client privilege, that privilege applies to

specific communications, and not to information contained within privileged communications—it is "[o]bvious[] [that] a client may be examined on deposition . . . as to the facts of the case, whether or not he has communicated them to his attorney." *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 735 (2009) (quoting *Greyhound Corp. v. Superior Court*, 56 Cal.2d 355, 397 (1961)). First Specialty has therefore failed to establish any valid basis for refusing to provide Curry for a noticed deposition.

  The court also rejects the vague argument that the "privacy rights" of First Specialty, or Collier, or a third-party individual "may be implicated here" if the court orders the production of "information [that] bears no relevance[.]" Dkt. No. 28 at 6-7; *see also* Dkt. No. 24 at 10. First, this argument fails under its own terms because, as discussed, Hartford seeks relevant information. Second, this argument cites only a single case, *Hecht, Solberg, Robinson, Goldberg & Bagley LLP v. Superior Court*, 137 Cal. App. 4th 579, 595 (2006), which the undersigned does not read as helpful to First Specialty here. In *Hecht* the Supreme Court of California considered whether corporations have any cognizable privacy rights that might permit them to object to the production of relevant financial information. *Id.* at 593-94. The court held that, even if corporations are assumed to have cognizable privacy rights, the trial court had nevertheless properly protected any such rights when it overruled the third-party corporation's objections and ordered production pursuant to "a standard protective order" which safeguards against the public disclosure of sensitive information. *See id.* at 596-600. Furthermore, any such corporate privacy rights "do not preclude discovery that is relevant to the essential issues in [a] case." *Id.* at 595. The undersigned therefore reads *Hecht* to mean in the context of this case, at most, that Collier and First Specialty might have privacy rights and that any such rights could be adequately protected, upon request, by a standard protective order. The undersigned also sees no basis to conclude First Specialty has standing to raise and litigate third-party privacy rights. First Specialty has therefore failed to establish that any privacy right justifies the withholding of relevant documents and deposition testimony in this case.

  Finally, First Specialty asserts that the documents Hartford seeks "are clearly protected from disclosure by the attorney-client privilege," Dkt. No. 24 at 10, and that "files generated

during the investigation of third party claims are made in anticipation of litigation and are not discoverable," *id.* (quoting *Underwriter Ins. Co. v. Atlanta Gas Light Co.*, 248 F.R.D. 663, 668 (N.D. Ga. 2008) (citations and quotations omitted)). Hartford responds that First Specialty has improperly asserted attorney-client privilege, mediation privilege, and the work-product doctrine as to a large set of withheld documents, but without describing each withheld document in a privilege log as required by FRCP 26(b)(5)(A). Dkt. No. 24 at 5.

The undersigned is persuaded that First Specialty has failed to duly describe each withheld document in its privilege log. Instead, the privilege log submitted to the court describes only a small number of documents which are not at issue in DDJR 1. Dkt. No. 24-3. First Specialty may not maintain privilege or work-product claims without logging each withheld document in the manner required by FRCP 26(b)(5)(A). Hartford correctly notes that "locating responsive documents, reviewing those documents, and pulling privileged information [is] a routine part of responding to discovery." Dkt. No. 24 at 5. And as First Specialty's own cited authority concludes, the work-product doctrine does not categorically apply to insurance claim files: an insurance company has a "routine duty" to investigate and document potential claims, and so a claim file may contain both discoverable documents routinely prepared "in the ordinary course of business" as well as protected work product prepared "in anticipation of litigation," *Tayler v. Travelers Ins. Co.*, 183 F.R.D. 67, 71 (N.D. N.Y. 1998) (collecting cases). First Specialty must therefore supplement its document production to Hartford and must specifically log each withheld document; First Specialty cannot rest on the assertion that a variety of privileges justify its decision to categorically withhold a wide range of responsive documents.

Finally, the undersigned notes for the benefit of the parties' future discovery efforts: (1) particular documents may be protected under attorney-client privilege if they are communications sent between an insurer or an insured and their shared attorney, *Bank of Am., N.A. v. Superior Court of Orange Cty.*, 212 Cal. App. 4th 1076, 1090 (2013), but First Specialty may not use that privilege to justify withholding documents which are not attorney-client communications or to justify withholding discoverable facts which happen to be stated in privileged communications, *see Costco Wholesale Corp.*, 47 Cal. 4th at 735; and (2) given the relevance of the litigation risks

1  faced by Collier, it is possible that some work product and opinion work product related to those
2  risks will be discoverable here, *see Holmgren v. State Farm Mut. Auto. Ins. Co.*, 876 F.2d 573,
3  576-77 (9th Cir. 1992).

### Conclusion

The documents Hartford seeks are relevant to its claim for equitable contribution; discovery of those documents is not categorically barred by privileges, privacy rights, or the work-product doctrine, and First Specialty has failed to provide a privilege log that complies with FRCP 26(b)(5)(A). First Specialty shall therefore produce: (1) as to request for production 3, the Laurels, Redwoods, and Sycamores claim files, less any additional-insured tender documents; (2) as to requests for production 4, 5, and 7, documents which reflect the remaining completed operations limits for each policy First Specialty issued to Collier; and (3) documents responsive to the other requests for production at issue in DDJR 1. First Specialty may, however, continue to withhold any given document to the extent that such a decision is duly supported by an updated privilege log which complies with FRCP 26(b)(5)(A).

Curry has personal knowledge of relevant, discoverable facts and First Specialty has failed to justify its refusal to cooperate in the deposition of Curry. First Specialty shall therefore cooperate in arranging for the deposition of Curry.

The parties shall promptly meet and confer to develop a mutually agreeable plan for how, and by when, First Specialty will comply with the terms of this order. The parties will also discuss whether the case-management schedule in this case should be changed to accommodate compliance with this order. The parties will be prepared to discuss these issues at the case-management conference that is currently set for August 30, 2016.

**IT IS SO ORDERED.**

Dated: 8/24/16

HOWARD R. LLOYD
United States Magistrate Judge